**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No._____

LUCAS C. STANLEY, individually,
and on behalf of all others, similarly situated,

      Plaintiff,

v.

VOLKSWAGEN GROUP OF AMERICA, INC.,

      Defendant.

_____

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**
_____

## I.   <u>INTRODUCTION</u>

1.    Plaintiff, **LUCAS C. STANLEY**, individually, and on behalf of all others similarly situated, alleges the following against Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen"), based, where applicable, on personal knowledge, information and belief, and the investigation of counsel.  This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

## II.   <u>NATURE OF THE ACTION</u>

2.    This class action concerns the intentional installation of "defeat devices" on over a reported 482,000 diesel Volkswagen and Audi vehicles sold in the United States since 2009.

Defendant marketed those vehicles as environmentally-friendly cars with high fuel efficiency, performance, and very low emissions.  Defendant failed to manufacture those vehicles with those attributes.

3.    According to the U.S. Environmental Protection Agency (EPA),Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2014 VW Jetta SportWagen; MY 2012-2015 VW Beetle; MY 2010-2015 VW Golf; MY 2012-2015 VW Passat; MY 2012-2015 VW Beetle Convertible; MY 2015 VW Golf SportWagen; and MY 2010-2015 Audi A3 ("Defeat Device Vehicles").  There may be additional vehicle models and model years with this defeat device installed.

4.     Instead of delivering these vehicles as represented in its marketing, Defendant manufactured these vehicles with a device that switched on the full emission control systems only under certain circumstances, contrary to its marketing representations.

5.    The defeat devices Defendant designed and installed work by switching on the full emissions control systems in Defendant's vehicles only when the vehicle is undergoing periodic emissions testing. The technology needed to control emissions from Defendant's vehicles to meet state and federal emissions regulations reduces their performance, limiting acceleration, torque, and fuel efficiency.

6.    The defeat devices simply shut off most of the emissions control systems in the vehicle once the vehicle has completed its emissions test.  This has resulted in Defendant's vehicles sending many times the pollution into the environment as is allowed under the Clean Air Act and state

regulations. Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

7.     These, among other violations, are explained in a Notice of Violation the EPA issued to Defendant, a copy of which is attached to this Class Action Complaint as Appendix A.

### III.   PARTIES

8.     Plaintiff Lucas C. Stanley is a resident and citizen of Gypsum, Colorado. He is the owner of a 2013 diesel Volkswagen Jetta SportWagen.

9.     Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in the state of Colorado, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

10.     At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles in Colorado under the Volkswagen and Audi brand names. Volkswagen and/or its agents designed the CleanDiesel engines and engine control systems in the Defeat Device Vehicles, including the "defeat device."   Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

### IV.   ANY OTHERWISE-APPLICABLE STATUTES OF LIMITATION ARE TOLLED

11.     Through the exercise of reasonable diligence, and within any applicable statutes of

limitation, Plaintiff and members of the proposed class could not have discovered that Volkswagen was concealing and misrepresenting the true emissions levels and performance of its vehicles, and concealed its use of defeat devices in these vehicles.

12.    Volkswagen had information in its sole possession about the existence of its emissions and performance deception and that it concealed that information, which was discovered by Plaintiff just before this action was filed.

13.    Throughout the relevant time period, all applicable statutes of limitation have been tolled by Volkswagen's knowing and active fraudulent concealment. Instead of disclosing that the emissions and performance of the Defeat Device Vehicles were different than represented, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards.

14.    Volkswagen was under a continuous duty to disclose to Plaintiff and the other class members the facts that it knew about the emissions and performance of Defeat Device Vehicles, and of those vehicles' failure to comply with federal and state laws.

15.    Although it had the duty throughout the relevant period to disclose to Plaintiff and class members that it had engaged in the deception described in this Complaint, Volkswagen chose to evade federal and state emissions and clean air standards with respect to the Defeat Device Vehicles, and it intentionally misrepresented its lack of compliance with state law regulating vehicle emissions and clean air.   Thus, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

### V.   JURISDICTION AND VENUE

16.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

17.    This Court has personal jurisdiction over Defendant because it conducts business in Colorado, and has sufficient minimum contacts with Colorado.

18.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendant has caused harm to class members residing in this District.

### VI.   FACTS

19.    Defendant intentionally designed and sold vehicles that misled consumers and regulators about the amount of pollution these vehicles created and the fuel efficiency and performance they possessed. Despite marketing itself as an environmentally conscientious company, Defendant sold vehicles that produced pollution in excess of federal and state regulations, and then intentionally and knowingly hid the truth about those vehicles.

20.    On September 18, 2015, the EPA issued a Notice of Violation ("NOV").  The NOV explains that Defendant has installed software in the Volkswagen and Audi diesel vehicles sold by Defendant in the United States that detects when the vehicle is undergoing emissions testing and turns full emissions controls on only during the test. At all other times that the vehicle is running,

5

the emissions controls are deactivated, meaning that pollution is freely released into the environment at levels that exceed those allowed by federal and state clean air regulators.  This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.  *See* Appendix A.

21.    Volkswagen programmed the engine control computers in the Defeat Device Vehicles with software that detects when the vehicles are undergoing emissions testing, and then operates the vehicle's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the vehicle is not being emissions tested, the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

22.    The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity.  Under federal law, vehicles equipped with defeat devices, which reduce the effectiveness of emissions control systems and performance during normal driving conditions, cannot be certified.  By manufacturing and selling vehicles with defeat devices that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in deceptive trade practice under Colorado state law and federal law.

23.    Had Plaintiff and class members known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Recall or no recall,

they suffered a diminution in value in their vehicles, and annoyance, inconvenience, loss of time, and loss of use of enjoyment of the Defeat Device Vehicles.

24.     Although the EPA has ordered Defendant to recall the Defeat Device Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation, purchasers of the Defeat Device Vehicles have and will continue to suffer significant harm.   First, Volkswagen will not be able to make the Defeat Device Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency.   As a result, even if Volkswagen is able to make class members' Defeat Device Vehicles EPA compliant, class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised and therefore their value will be decreased.   Second, the value of every Defeat Device Vehicle has been diminished. Not only did Plaintiff and class members pay too much for vehicles now worth substantially less, but they will end up paying more to fuel their less efficient vehicles over the years they own their vehicles and will not benefit from the performance qualities of their vehicles as advertised. Plaintiff and class members have therefore also suffered annoyance, inconvenience, loss of time, and loss of use of enjoyment of the Defeat Device Vehicles even if a recall is implemented.

25.     If Volkswagen recalls the Defeat Device Vehicles and degrades the CleanDiesel engine performance in order to make the Defeat Device Vehicles compliant with EPA standards, Plaintiff and class members' Defeat Device Vehicles will necessarily be worth less in the used marketplace because of their decrease in performance and efficiency, which means that owners of

Defeat Device Vehicles will not be able to recoup nearly as much value in the future.  In addition the Defeat Device Vehicles will have lost value as repaired because of doubt about the validity and efficacy of the modifications made by Volkswagen.  Thus, in this regard, Plaintiff and class members have also suffered annoyance, inconvenience, loss of time, and loss of use of enjoyment of the Defeat Device Vehicles.

26.    As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit many times the allowed levels, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property.

## VII.    PLAINTIFF'S FACTS

27.    Plaintiff Lucas Stanley, a citizen of Colorado, purchased a 2013 diesel Volkswagen Jetta SportWagen in Colorado.

28.    Plaintiff became interested in buying the 2013 Volkswagen Jetta SportWagen after he relied on Defendant's statements to the effect that the 2013 Volkswagen Jetta SportWagen was a clean, low-emission, high-performing vehicle, a key factor in his decision to purchase the vehicle.

29.    Plaintiff would not have paid as much for the 2013 Volkswagen Jetta SportWagen, or likely would not have purchased it at all, if he had known that the emissions were much higher than advertised.  Now he owns the vehicle and he is concerned the vehicle's resale value will drop.  He is also concerned that any repairs done to their vehicle as part of a recall could not only diminish its performance, affecting the resale value, but also the stigma associated with a Defeat Device Vehicle

will affect his vehicle's resale value.

## VIII.    CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action on behalf of himself and as a class action, pursuant to the

provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the

following class:

> All persons or entities in Colorado who are current or former owners and/or lessees
> of a "Defeat Device Vehicle." Defeat Device Vehicles include, without limitation:
> Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2014 VW Jetta SportWagen;
> MY 2012-2015 VW Beetle; MY 2010-2015 VW Golf; MY 2012-2015 VW Passat;
> MY 2012-2015 VW Beetle Convertible; 2015 VW Golf SportWagen; and MY 2010-
> 2015 Audi A3.

31.    Excluded from the class are individuals who have personal injury claims resulting

from the "defeat device" in the CleanDiesel system.   Also excluded from the class are Volkswagen

and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the

class; governmental entities; and the judge to whom this case is assigned and his/her immediate

family.   Plaintiff reserves the right to revise the class definition based upon information learned

through discovery.

32.    Certification of Plaintiff's claims for class-wide treatment is appropriate because

Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as

would be used to prove those elements in individual actions alleging the same claim.

33.    This action has been brought and may be properly maintained on behalf of the class

proposed herein under Federal Rule of Civil Procedure 23.

9

1. **Numerosity: Federal Rule of Civil Procedure 23(a)(1).**

34. The members of the class are so numerous and geographically dispersed that individual joinder of all class members is impracticable. While it is likely that there are not less than hundreds of members of the class, the precise number of class members may be ascertained from Volkswagen's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

2. **Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**

35. This action involves common questions of law and fact, which predominate over any questions affecting individual class members, including, without limitation:

(a) Whether Volkswagen engaged in the conduct alleged herein;

(b) Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defeat Device Vehicles into the stream of commerce in the United States;

( c) Whether the CleanDiesel engine system in the Defeat Device Vehicles contains a defect in that it does not comply with EPA requirements;

(d) Whether the CleanDiesel engine systems in Defeat Device Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Defeat Device Vehicles;

(e) Whether Volkswagen knew about the "defeat device" and, if so, how long

Volkswagen has known;

(f) Whether Volkswagen designed, manufactured, marketed, and distributed Defeat Device Vehicles with a "defeat device";

(g) Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

(h) Whether Plaintiff and the other class members overpaid for their Defeat Device Vehicles; and

(i) Whether Plaintiff and the other class members are entitled to damages and other monetary relief and, if so, in what amount.

**3.   Typicality: Federal Rule of Civil Procedure 23(a)(3).**

36.   Plaintiff's claims are typical of the other class members' claims because, among other things, all class members were comparably injured through Volkswagen's wrongful conduct as described above.

**4.   Adequacy: Federal Rule of Civil Procedure 23(a)(4).**

37.   Plaintiff is an adequate class representative because his interests do not conflict with the interests of the other members of the class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The class's interests will be fairly and adequately protected by Plaintiff and his counsel.

**5.**    **Superiority: Federal Rule of Civil Procedure 23(b)(3).**

38.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for members of the class to individually seek redress for Volkswagen's wrongful conduct.

39.    Even if class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## IX.   CAUSES OF ACTION

### (1) First Claim for Relief - Deceit Based on Fraud

40.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

41.    Plaintiff brings this claim individually and on behalf of the class.

42.    Volkswagen intentionally concealed and suppressed material facts concerning the quality and character of the Defeat Device Vehicles and knowingly made false representations concerning material facts, namely, the Defeat Device Vehicles' low-emissions and high performance

at all times the vehicles were in operation.  As alleged in this Complaint, Volkswagen engaged in deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants, which contributes to the creation of ozone and smog.

43.    The software installed on the vehicles at issue was designed to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was that vehicles passed emissions certifications by way of deliberately induced false readings.  Thus, Defendant concealed or failed to disclose material facts and made false representations with the intent that Plaintiff and class members would purchase low-emission, high performance vehicles that were marketed which they might not have purchased had they known the actual facts.

44.    Plaintiff and class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and misleading.  As alleged herein, Plaintiff and class members did not, and could not, have known of Volkswagen's false representations.  Plaintiff and class members purchased their vehicles on the assumption that they were purchasing low-emission, high performance vehicles as marketed by Volkswagen.

45.    Volkswagen's false representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen knew, its

customers, including Plaintiff and class members, highly valued that the vehicles they were purchasing or leasing were clean diesel vehicles, and they paid accordingly.

46.   Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the vehicles at issue because knowledge of the deception and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its deception, and because Volkswagen knew the facts were unknown to or reasonably discoverable by Plaintiff or class members.

47.   Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards and performance, starting with references to them as clean diesel vehicles, or vehicles with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

48.   Having volunteered to provide information to Plaintiff and the class, Volkswagen had the duty to disclose the entire truth.  These omitted and concealed facts were material because they directly affect the value of the Defeat Device Vehicles purchased or leased by Plaintiff and class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions

14

certifications testing their vehicles must pass.  Volkswagen represented to Plaintiff and class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that Volkswagen had manipulated the testing process.

49.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to realize its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and class members.

50.     Plaintiff and class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel vehicles manufactured by Volkswagen, and/or would not have continued to drive their high emission vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and class members' actions and reliance were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or class members. Plaintiff's and the class member's reliance on Volkswagen's concealment of the material facts and false representations have caused damages and losses to Plaintiff and class members.

51.     As a result of Volkswagen's false representations, and its concealment and/or suppression of the material facts, Plaintiff and class members have sustained damages because they

own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen - and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiff and class members been aware of Volkswagen's emissions deceptions and performance with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiff and class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

52.    The value of Plaintiff's and class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and class members' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles. Therefore, Plaintiff and class members have suffered a diminution in value in their vehicles, and annoyance, inconvenience, loss of time, and loss of use of enjoyment of the Defeat Device Vehicles.

53.    Accordingly, Volkswagen is liable to Plaintiff and class members for economic and non-economic damages in an amount to be proven at trial.

54.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and class members' rights and the

representations that Volkswagen made to them, in order to enrich Volkswagen.  Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### (2) <u>Second Claim for Relief - Breach of Contract</u>

55.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

56.    Plaintiff brings this claim individually and on behalf of the class.

57.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiff and the other class members to make their purchases or leases of their Defeat Device Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other class members would not have purchased or leased these Defeat Device Vehicles, would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device."  Accordingly, Plaintiff and the other class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

58.    Each and every sale or lease of a Defeat Device Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other class members defective Defeat Device Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design,

including information known to Volkswagen rendering each Defeat Device Vehicle less emissions compliant and not as high performance, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

59.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the class have suffered a diminution in value in their vehicles, and annoyance, inconvenience, loss of time, and loss of use of enjoyment of the Defeat Device Vehicles. Accordingly, Volkswagen is liable to Plaintiff and class members for economic and non-economic damages in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### (3) Third Claim for Relief - Violation of the Colorado Consumer Protection Act

60.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

61.     Plaintiff brings this claim individually and on behalf of the class.

62.     Volkswagen's conduct, as described herein, was and is in violation of the Colorado Consumer Protection Act (CCPA), C.R.S. § 6-1-105.  Volkswagen's conduct violates the CCPA in at least the following ways:

(a)     By engaging in deceptive trade practice by knowingly and intentionally concealing from Plaintiff, class members, and the general public the fact that the Defeat Device Vehicles suffer from a design defect while obtaining money from Plaintiff and the class in the course of doing business, which significantly impacts purchasers and lessees of the Defeat Device Vehicles;

(b)     By knowingly making false representations as to the certification of Defeat Device Vehicles with EPA compliance standards and the characteristics and benefits of these vehicles;

( c)     By marketing and advertising Defeat Device Vehicles as possessing functional and defect-free, EPA compliant CleanDiesel engine systems with the intent not to sell them as advertised;

(d)     By purposefully installing an illegal "defeat device" in the Defeat Device Vehicles to cause Defeat Device Vehicles to pass emissions tests when in truth and fact they did not pass such tests;

(e)     By violating federal laws, including the Clean Air Act; and

(f)     By violating other Colorado laws, including Colorado laws governing vehicle emissions and emission testing requirements.

63.     Volkswagen's misrepresentations and omissions alleged herein caused Plaintiff and the other class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other class members would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain CleanDiesel engine systems that failed to comply with EPA and Colorado emissions standards.

64.     Accordingly, Plaintiff and the other class members have suffered injury in fact including lost money or property as a result of Volkswagen's misrepresentations and omissions.

19

Volkswagen's deceptive trade practice, as described herein, has caused actual damages and losses to Plaintiff and the class, including a diminution in value in their vehicles, and annoyance, inconvenience, loss of time, and loss of use of enjoyment of the Defeat Device Vehicles.

65.     Plaintiff therefore requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and members of the class any money it acquired by deceptive trade practice, including restitution and/or restitutionary disgorgement, treble damages, and for such other relief allowable under the Act.

### (4) Fourth Claim for Relief - Breach of Express Warranty

66.     Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

67.     Plaintiff brings a cause of action against Defendant for breach of express warranty on behalf of himself and the class.

68.     Defendant made numerous representations, descriptions, and promises to Plaintiff and class members regarding the performance and emission controls of its diesel vehicles.

69.     Defendant knew or should have known that its representations, descriptions, and promises were false.  Defendant was aware that it had installed defeat devices in the vehicles it sold to Plaintiff and class members.

70.     Plaintiff and class members reasonably relied on Volkswagen's representations in purchasing "clean" diesel vehicles.  Those vehicles, however, did not perform as was warranted. Unbeknownst to Plaintiff, those vehicles included devices that caused their emission reduction

systems to perform at levels worse than advertised. Those devices are defects. Accordingly, Volkswagen breached its express warranty by providing a product containing defects that were never disclosed to the Plaintiff and class members.

71.     As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiff and class members have suffered a diminution in value in their vehicles, and annoyance, inconvenience, loss of time, and loss of use of enjoyment of the Defeat Device Vehicles. Accordingly, Volkswagen is liable to Plaintiff and class members for economic and non-economic damages in an amount to be proven at trial.

## (5) Fifth Claim for Relief - Breach of Implied Warranty

72.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

73.      Plaintiff brings this cause of action against Volkswagen for breach of implied warranty on behalf of himself and the class.

74.     Volkswagen made numerous representations, descriptions, and promises to Plaintiff and class members regarding the functionality of Volkswagen's "clean" diesel technology.

75.     Plaintiff and class members reasonably relied on Volkswagen's representations in purchasing the Defeat Device vehicles.

76.     As set forth throughout this Complaint, Volkswagen knew that its representations, descriptions and promises regarding its diesel engines were false.

77.     When Plaintiff and class members purchased Volkswagen's diesel vehicles, they did

not conform to the promises or affirmations of fact made in Volkswagen's promotional materials, including that the vehicles were designed to meet the most demanding environmental standards. Instead, as alleged above, those vehicles were designed to cheat those standards, and the vehicles emitted far higher levels of pollution than promised.

78.     Accordingly, the Defeat Device Vehicles failed to conform to Volkswagen's implied warranty regarding their functionality.

79.     As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiff and class members suffered significant injury when Volkswagen sold them vehicles that are worth far less than the price Plaintiff and class members paid for them. Plaintiff and class members have suffered a diminution in value in their vehicles, and annoyance, inconvenience, loss of time, and loss of use of enjoyment of the Defeat Device Vehicles. Accordingly, Volkswagen is liable to Plaintiff and class members for economic and non-economic damages in an amount to be proven at trial.

### (6) Sixth Claim for Relief - Unjust Enrichment

80.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

81.     Plaintiff brings this count on behalf of himself and, where applicable, the class.

82.     Plaintiff and members of the class conferred a benefit on Volkswagen by, *inter alia*, paying for and using its vehicles.

83.     Volkswagen has retained this benefit, and knows of and appreciates this benefit.

84.   Volkswagen was and continues to be unjustly enriched at the expense of Plaintiff and class members.

85.   Volkswagen should be required to disgorge this unjust enrichment. Volkswagen is liable to Plaintiff and class members for economic and non-economic damages in an amount to be proven at trial.

## X.   REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of members of the class, respectfully requests that the Court enter judgment in his favor and against Volkswagen, as follows:

A.   Certification of the proposed class, including appointment of Plaintiff's counsel as class counsel;

B.   Cost of repair or replacement of the subject vehicles that complies with emissions and performance standards as marketed by Volkswagen;

C.   Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

D.   Revocation of acceptance;

E.   Compensatory damages for annoyance and discomfort, lost time, loss of use of enjoyment, costs of repair, and diminution in value.

F.   For treble and/or punitive damages as permitted by applicable laws;

G.   An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

H.      An award of costs and attorneys' fees as allowable by statute and law; and

I.      Such other or further relief as may be appropriate.

## XI.    DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Fed.R.Civ.P. 38.

DATED this 24th day of September, 2015.

By: s/ Kevin S. Hannon
*Kevin S. Hannon*
The Hannon Law Firm, L.L.C.
1641 Downing Street
Denver, Colorado 80218
Tel: (303) 861-8800
Email: khannon@hannonlaw.com
*Attorney for Plaintiff*

By: s/ Gillian M. Fahlsing
*Gillian M. Fahlsing*
The Hannon Law Firm, L.L.C.
1641 Downing Street
Denver, Colorado 80218
Tel: (303) 861-8800
Email: gfahlsing@hannonlaw.com
*Attorney for Plaintiff*

Plaintiff's Address:

Lucas Stanley
P.O. Box 1960
Gypsum, CO  81637